UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CAROL CARDINAL,           :
           Plaintiff,   :
                                      :          **OPINION AND ORDER**
                                      :
v.                        :          18 CV 12004 (VB)
                                      :
CVS CAREMARK, INC.,       :
           Defendant.    :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Carol Cardinal brings this action against her former employer defendant CVS Albany L.L.C.,[1] alleging it discriminated against her in violation of the Americans with Disabilities Act and the New York State Human Rights Law while she worked at various CVS stores, including CVS's Kingston, New York, store (the "Kingston store").  (Doc. #1).

      Defendant moves to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act ("FAA") and to dismiss or stay this action pending arbitration.  (Doc. #6).  Plaintiff opposes the motion, claiming she never agreed to arbitrate covered claims.

      On July 19 and 23, 2019, the Court held a non-jury trial[2] to hear evidence on defendant's motion to compel.

      For the following reasons, defendant's motion to compel arbitration is GRANTED, and this action is STAYED pending arbitration.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1]    Incorrectly sued herein as "CVS Caremark, Inc."

[2]    The parties consented to the bench trial.

**FINDINGS OF FACT**

The following findings of fact are based on the evidence adduced at the July 19 and July 23, 2019, non-jury trial, which included documentary exhibits as well as the testimony of plaintiff; Tammy Ricci, a former supervisor at the Kingston store; David Guido, a former store manager at the Kingston store; and Robert Bailey, CVS's director of learning and development.

A.  Plaintiff's Employment at CVS

Starting in June 2009, plaintiff worked for CVS at various retail locations as a shift supervisor, and later as an assistant manager. As a CVS employee, she was required to undergo various trainings, including web-based trainings on CVS's learning management system (known as "LearNet").

In 2014 and 2015, plaintiff took an extended leave of absence. Plaintiff testified that she returned to work at the Kingston store on Saturday, April 18, 2015. She had several outstanding trainings to complete. Plaintiff did not work on Sunday, April 19, but worked for about seven hours during the day on Monday, April 20, and for seven-and-a-half hours during the day on Tuesday, April 21. (DX G).[3]

B.  Plaintiff Electronically Signed the Arbitration Agreement on April 21

At some point on April 21, 2015—plaintiff's third workday after she returned from leave—plaintiff logged into LearNet with her employee identification number and personal password, launched and reviewed the web-based Arbitration Training Course and CVS's Arbitration Policy, and clicked "Yes" to indicate that she had read and understood the arbitration policy and agreed to arbitrate all covered claims. (DX B).

It is undisputed that CVS's records reflect plaintiff signed the arbitration agreement.

---

[3] "DX __" refers to defendants' exhibits received in evidence at trial.

Although the policy permitted employees to later opt out by sending a letter stating so, plaintiff did not do so.  CVS records indicate plaintiff also completed four other workplace trainings on April 21, 2015:  customer-focused replenishment, day-to-day operations overview, mySchedule technical training, and loss prevention overview.  (DX D).

      C.      <u>Plaintiff's Forgery Claim Is Implausible</u>

Plaintiff testified that someone else, possibly her manager David Guido, logged into her account and forged her electronic signature agreeing to the Arbitration Policy.

The Court finds this claim implausible.  Simply put, plaintiff has not offered credible evidence suggesting who would have forged her electronic signature on the Arbitration Policy, how that individual forged her signature, and most importantly, why he or she would have done so.

Plaintiff initially accused Guido of the forgery in her opposition brief.  (Doc. #11 at 6).  At the bench trial, however, Guido stated— and his testimony was not challenged—that he was not working at the Kingston store on April 21, 2015.  Plaintiff offered no theory as to who else could or would have forged her signature.  In addition, the Court credits Guido's testimony that he never completed nor asked anyone else to complete training for another employee at any point, including plaintiff's arbitration training on April 21, 2015.  This testimony was supported by several memoranda he sent to his staff which noted employees, not managers, were responsible for ensuring they completed their assigned training.  (DX I).

As to how the forgery was accomplished, plaintiff testified she provided a former manager with her personal password when she was hired, and argued it is possible that manager saved her password and gave it to Guido or another supervisor.  However, Guido credibly

3

testified that neither he nor any other manager collected, much less saved, employees' passwords. Plaintiff's speculation does not constitute credible evidence.

Most importantly, it is unlikely Guido or anyone else would have forged plaintiff's signature on the arbitration agreement. Guido and David Bailey, CVS's director of learning and development, both credibly testified CVS employees are required to perform training to improve their performance, not simply for the sake of training. It would be short-sighted, they said, for managers to fake or forego employee training, because a store's performance would ultimately suffer.

Plaintiff testified that managers could have been motivated to falsify timely employee training, because timely training led to bonuses for store managers, while failure to complete training led to penalties. However, both Guido and Bailey, who are better positioned within CVS to understand the structure of such bonuses and penalties, credibly testified training did not play a direct role in compensation. At most, they said, completion of employee training was one of many factors that contributes to a store's general compliance score, which minimally factors into store performance upon which bonuses are awarded.

Nor are plaintiff's other arguments that her signature was forged persuasive.

<u>First</u>, plaintiff's claim that managers routinely completed employee training for absent employees relied entirely on testimony from plaintiff's witness, Tammy Ricci, a former supervisor at the Kingston store in 2011 and 2012.

The Court finds that Ms. Ricci's testimony was generally unreliable. Although Ricci testified that in 2011 and 2012 she and other supervisors often completed trainings on behalf of absent employees using employees' identification numbers and personal passwords, Ricci could not recall the full name of any employee for whom she completed trainings, or when she

completed them, or which trainings she completed. Her testimony was contradicted by the record and by other witnesses, including her testimony regarding whether the manager provided an answer key to the relevant trainings and whether the manager collected employees' personal passwords. Moreover, even if the Court found Ricci's testimony to be reliable—which it does not—Ricci's testimony concerning events in 2011 and 2012 predates the key events in this case by three years, and therefore has very little probative value.

Second, plaintiff's argument that she was unable to complete the listed trainings on April 21, 2015, while staffing the cash register, is unconvincing. Bailey testified credibly that trainings, including the Arbitration Training Course at issue here, generally took employees about twenty minutes to complete. Common sense dictates that a company has to find an appropriate balance in the length of trainings: lengthy trainings can harm employees' productivity; abbreviated trainings may present information that is too cursory or abridged. Therefore, it is equally plausible that plaintiff could have completed the arbitration training, as well as four others, in less than two hours on April 21. Indeed, CVS's records show plaintiff completed six employee trainings in a single day on January 7, 2013. (DX D).

In addition, as Bailey explained, an employee can start a training course and resume the same course at a later date. Again, it is possible that plaintiff started the trainings on April 18 and April 20, 2015, her first two days back at the Kingston store, and finished them on April 21, spreading out the training over several shifts.

The bottom line is that plaintiff has not offered credible evidence demonstrating someone else logged into her account and forged her signature on the arbitration agreement.

**CONCLUSIONS OF LAW**

The FAA declares arbitration agreements to be "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP, 434 F. Supp. 2d 211, 214–15 (S.D.N.Y. 2006) (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)) (internal quotation omitted).

However, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (internal quotation and citation omitted), and an arbitration agreement is interpreted like any other contract. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010). Thus, the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. at 339 (internal quotation and citations omitted).

In deciding whether to compel arbitration, a court must decide whether the parties agreed to arbitrate. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004). A party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. Savarese v. J.P. Morgan Chase, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016). When the party seeking arbitration meets that initial burden, the party opposing arbitration "may not rest on a denial but must submit evidentiary facts showing that there is a

dispute of fact to be tried." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995); Qin Hui Li v. Wok 88 Inc., 2018 WL 3384441, at *4 (S.D.N.Y. July 11, 2018) (citing Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000)).  If plaintiff raises a genuine issue of fact, the FAA directs courts to "proceed summarily to the trial thereof."  9 U.S.C. § 4.

Here, plaintiff submitted evidentiary facts showing "a dispute of fact to be tried," and the Court heard evidence at a trial contemplated by 9 U.S.C. § 4.  Oppenheimer & Co. v. Neidhardt, 56 F.3d at 358.  Plaintiff, as the party to an arbitration agreement seeking to avoid arbitration, now bears the burden to show the agreement is inapplicable or invalid.  Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

Based on the findings of fact described above, the Court finds and concludes that plaintiff failed to carry her burden to show she did not knowingly sign the arbitration agreement.  In sum, the events plaintiff alleges to have occurred are improbable.

Accordingly, defendant's motion to compel is granted.

Because it is settled law in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested," Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015), this action is stayed pending arbitration.

## CONCLUSION

The motion to compel arbitration is GRANTED, and the parties are ORDERED to arbitrate the case pursuant to the terms of the Arbitration Policy.

This action is STAYED pending arbitration and pending further Order of the Court.

The parties shall inform the Court by joint letter of the status of the arbitration by November 1, 2019, and every ninety days thereafter. Additionally, within ten days of completion of arbitration, the parties shall provide a joint status report to the Court.

The Clerk is instructed to terminate the motion (Doc. #6) and stay this case.

Dated: August 1, 2019
       White Plains, NY

                                  SO ORDERED:

                                  _____
                                  Vincent L. Briccetti
                                  United States District Judge